# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| GEORGE LEE, | ) |
| | ) |
|    Movant, | ) |
| | ) |
| v. | )     No. 4:17 CV 779 CDP |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|    Respondent. | ) |

## MEMORANDUM AND ORDER

George Lee seeks to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. Lee was convicted by a jury of conspiracy to distribute cocaine and marijuana (Count I), conspiracy to launder the proceeds of drug trafficking (Count II), and possession of a firearm in furtherance of a drug trafficking crime (Count III). Case No. 4:13 CR 355 CDP. Lee was sentenced to 180 months imprisonment on Counts I and II and 60 months imprisonment on Count III, to be served consecutively for an aggregate sentence of 240 months imprisonment. Lee appealed, and the Eighth Circuit Court of Appeals affirmed his conviction and sentence. *United States v. Haire,* 806 F.3d 991 (8th Cir. 2015).

Lee then filed this timely[1] § 2255 motion *pro se,* raising the following claims:

1) Counsel was ineffective for failing to challenge the seizure of the gun and drug paraphernalia from his home;

2) Counsel was ineffective for failing to investigate and prepare for trial because he presented no witnesses or evidence at trial; and

3) the wiretaps should have been suppressed.

Lee's ineffective assistance of counsel claims are conclusively refuted by the trial record. The evidence against him was very strong, as set forth in great detail in the appellate opinion affirming his conviction and sentence. Lee's remaining claim is procedurally defaulted. I will deny Lee's motion without an evidentiary hearing for the reasons that follow.

## Background Facts

The Eighth Circuit Court of Appeals summarized the evidence against Lee and his co-defendants as follows:

> In November 2011 DEA agents learned that Juan Williams was supplying cocaine to a drug dealer in St. Louis. In January 2012 postal inspectors intercepted a package sent from Houston to St. Louis containing 3 kilograms of cocaine and arrested the intended recipient, Carl King. In King's possession were two phones that had been in contact with cell phones used by Williams. DEA agents applied for and received a Title III warrant to

---

[1] Respondent's argument that the motion is untimely is denied as the record conclusively demonstrates that the motion was signed and verified by Lee under penalty of perjury and deposited in the prison mail system on March 10, 2017 [Doc. # 3 at 12], which, as respondent admits, was within the one-year limitations period. *See Moore v. United States,* 173 F.3d 1131, 1135 (8th Cir. 1999) (prison mailbox rule applies to § 2255 motions).

wiretap Williams's phones and later received a warrant to wiretap Lee's phone. *See* 18 U.S.C. § 2518.

During the wiretapped conversations Lee arranged to ship drugs to Williams and to other distributors in Mississippi and South Carolina. Lee discussed the price of the cocaine and how much money he was owed. Lee also called his own suppliers to order cocaine.

In April 2012 the DEA learned from the wiretap that Williams and Jamiel Johnson were bringing cash from St. Louis to Lee in Houston. The DEA had local police stop the car. A search of the car revealed a hidden compartment containing $69,910 in a vacuum sealed plastic bag. Although police seized the money, Williams and Johnson did not realize it until after they were released and checked the compartment. Williams called Lee to discuss the stop and the missing money. Lee in turn called an unnamed man to ask for advice. Later that month the DEA learned that Lee was mailing a package to South Carolina. Police obtained a search warrant and intercepted the package, which contained 3 kilograms of cocaine, crack cocaine, and marijuana. After the intercept Lee made a phone call to discuss retrieving the package from the post office, presuming that there was a problem with the delivery. Johnson testified at trial about other shipments of cocaine and marijuana that Lee had sent to Williams in exchange for cash. Johnson personally saw Williams receive a total of over 10 kilograms of cocaine and over 100 pounds of marijuana from Lee.

In May 2012 Lee and Williams made a series of phone calls about sending Haire from St. Louis to Houston with "sealed up" money. Williams was to get him a one way train ticket to Houston, and Lee would purchase a one way plane ticket back to St. Louis. Williams spelled Haire's name for Lee so he could purchase the plane ticket and then called Haire to get his date of birth. Lee and Williams also discussed giving Haire a phone to use during the trip. In these conversations, Williams referred to Haire as his uncle or "Unc," and said he had "already told him the deal" and that Haire "already [knew] what's going on." Lee stated that "Unc 100," meaning that Haire was reliable or solid. At trial Johnson identified Haire as Williams's uncle and testified that Williams said that he had paid Haire to receive packages of drugs at Williams's father's address.

On June 1, 2012 a DEA agent spotted Haire boarding a train in St. Louis carrying a black backpack. Early the next morning at the train station in

Longview, Texas, where passengers bound for Houston transfer to a bus, DEA officer Chad Lanier saw Haire anxiously looking at a drug sniffing dog. Lanier stopped Haire as he attempted to board a bus to Houston. Lanier said he was looking for a possible terrorist, and asked Haire if he was carrying any narcotics or large sums of currency. Haire said he had a little bit of money, and pulled a roll of about ten $20 bills out of his pocket. Lanier asked if he had any more money in his bag and Haire replied, "Yeah, I do have a little bit of money." When asked how much, Haire first stated that he had a few thousand dollars, but then clarified that he had $25,000. Haire told Lanier that the money was his and that he was going to buy a car.

Lanier obtained Haire's consent to search his backpack, which contained clothing and two nested vacuum sealed plastic bags containing rubber banded stacks of bills totaling $33,530. A canine alerted to an odor of narcotics on the backpack, and the currency smelled of marijuana when officers later opened the sealed bags. The DEA seized the currency. After the dog alerted on the backpack, Haire told Lanier that he smoked marijuana but did not have any on him. Haire also changed his story about planning to buy a car, stating that he was going to fly back to St. Louis instead. Later that day Williams called Lee to report that "they hit Unc" and relayed what Haire had told him about the stop and seizure.

In February 2013 the DEA obtained a seizure warrant for Lee's car. When agents executed the warrant Lee gave them consent to search his house, where they found marijuana, electronic scales, $5,000 in currency, chemicals used to dilute cocaine, and several firearms.

*Haire,* 806 F.3d at 994-95.

## Discussion

### A. No Evidentiary Hearing is Required

The records before me conclusively demonstrate that Lee has no right to relief. I will not hold an evidentiary hearing on this matter. "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files

4

and records of the case conclusively show that he is entitled to no relief." *Anjulo-Lopez* v. *United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted). "No hearing is required, however, where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Id.* (internal quotation marks and citations omitted). The record here conclusively refutes the claims, so I will not hold an evidentiary hearing.

## B. Lee Did Not Receive Ineffective Assistance of Counsel

Lee brings claims of ineffective assistance of trial counsel. The Sixth Amendment establishes the right of the criminally accused to the effective assistance of counsel. *Strickland* v. *Washington*, 466 U.S. 668, 686 (1984). To state a claim for ineffective assistance of counsel, Lee must prove two elements of the claim. First, he "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In considering whether this showing has been accomplished, "judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. *Id.* Second, Lee "must show that the deficient performance prejudiced the defense." *Id.* at 687. This requires him to demonstrate "a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The court need not address both components if the movant makes an insufficient showing on one of the prongs. *Engelen v. United States,* 68 F.3d 238, 241 (8th Cir. 1995). Under these standards, Lee did not receive ineffective assistance from his attorney.

In his first ground for relief, Lee alleges that his attorney was constitutionally ineffective because he did not argue for the suppression of evidence seized from his home. Lee claims he was "bombarded and manipulated into his home" and, as a result, the consent he gave to search his home was not voluntary. This claim is summarily rejected as Lee's attorney made this argument in pretrial proceedings by filing a motion to suppress evidence seized from his home. [Doc. #162 in Case No. 4:13 CR 355]. In the motion, counsel argued that Lee's consent to search was not voluntary. After an evidentiary hearing, United States Magistrate Judge Nannette A. Baker recommended that the motion to suppress be denied, finding that Lee voluntarily consented to the search. [Doc. #172 in Case No. 4:13 CR 355]. I adopted Judge Baker's recommendation and denied the motion to suppress because I agreed that Lee voluntarily consented to the search of his home. [Doc. # 188 in Case No. 4:13 CR 355]. In addition to challenging the admission of the evidence in pre-trial filings, at trial counsel vigorously cross-examined respondent's witnesses regarding the search of Lee's

home. Counsel cannot be ineffective for failing to re-raise or win a meritless argument, so Lee's claim fails as a matter of law. Ground 1 of Lee's § 2255 motion is denied.

In Ground 2, Lee alleges that his attorney was ineffective for failing to adequately prepare for trial. Lee complains that his attorney did not "call any witnesses or present evidence." Yet Lee does not specify any witnesses he instructed counsel to call or provide any information about what their alleged testimony would have been or how their testimony would have assisted his defense. "Decisions relating to witness selection are normally left to counsel's judgment, and this judgment will not be second-guessed by hindsight." *Hanes v. Dormire,* 240 F.3d 694, 698 (8th Cir. 2001) (internal citations and quotation marks omitted). "Trial counsel has a duty to conduct a reasonable investigation or to make a reasonable determination that an investigation is unnecessary. When a claim for ineffective assistance of counsel is alleged on the basis of failing to investigate or act, the reasonableness of the nonfeasance must be assessed in light of all circumstances, and a significant degree of deference given to counsel and his or her professional judgment." *Griffin v. Delo,* 33 F.3d 895, 901 (8th Cir. 1994).

Lee's claim fails because he cannot demonstrate that he was prejudiced by counsel's failure to investigate or call witnesses. Lee has not provided any independent evidence as to the identity of any witnesses or what they would have

allegedly said had they been interviewed or called to testify. *See United States v. Vazquez-Garcia,* 211 Fed. Appx. 544, 546 (8th Cir. 2007). He provided no affidavit from any alleged witness or any other information supporting his claims. The only information about what the potential testimony of unidentified witnesses would have been is pure speculation on the part of Lee, which is not enough to undermine confidence in the outcome of the trial as required by *Strickland. See id*. "Recognizing the deferential standard when reviewing the conduct of counsel, [I] decline to find prejudice in this situation when there is no evidence other than speculation to support the finding." *Id.*

The only evidence Lee specifically identifies that counsel should have introduced is a video allegedly showing officers "bombarded and manipulated into his home" during the search of his home. Again, Lee offers nothing more than self-serving speculation as to the existence and content of this video, which is insufficient to demonstrate prejudice from any alleged error of counsel. Moreover, the issue of the voluntariness of Lee's consent to search his home was thoroughly litigated by counsel during pretrial proceedings.

Lee also complains generally that counsel was ineffective simply because he did not put on evidence, choosing instead to mount a defense through vigorous cross-examination of the respondent's witnesses. Yet Lee does not identify how the result of his trial would have been different but for counsel's alleged errors.

The evidence of Lee's guilt was overwhehning. Moreover, Lee's co-defendant called no witnesses at trial either, and there was nothing unusual or ineffective about counsel's decision to do the same. Lee cannot demonstrate either deficient performance or resulting prejudice from counsel's alleged failure to introduce evidence.

To the extent Lee suggests that his attorney was ineffective for preventing him from testifying at trial, the claim is conclusively refuted by the record. A criminal defendant has a constitutional right to testify in his own defense, *see Rock v. Arkansas,* 483 U.S. 44, 49 (1987), and only the defendant is empowered to knowingly and voluntarily waive that right. *United States v. Bernloehr,* 833 F.2d 749, 751 (8th Cir. 1987). Advice from counsel not to testify is not ineffective assistance if it might be considered sound trial strategy. *See King v. Roper,* No. 4:04 CV 1672 CDP, 2005 WL 1518291, at *8 (E.D. Mo. June 24, 2005) (internal citations and quotation marks omitted).

Here, I clearly and unequivocally addressed the right to testify with Lee on the record during the trial. Specifically, I held the following exchange with Lee:

> THE COURT: Mr. Lee, do you understand you have a right to testify in this case if you wish to do so?
>
> DEFENDANT LEE: Yes, Your Honor.
>
> THE COURT: And do you understand that although your lawyer can advise you on whether that's a good idea and what he thinks you should do, it is actually your decision whether you testify or not? Do you understand that?

9

>DEFENDANT LEE: Yes, Your Honor.

>THE COURT: And without revealing any communications with your lawyer, have you had enough time to discuss this issue with your lawyer?

>DEFENDANT LEE: Yes, Your Honor.

>THE COURT: And is it your decision not to testify in this case?

>DEFENDANT LEE: Yes, Your Honor.

[Doc. # 317 at 98-99 in Case No. 4: 13 CR 355]. The record conclusively demonstrates that Lee knowingly waived his right to testify on his own behalf after being fully advised by the Court of that right, and he cannot contradict his statements made to me on the record by claiming now that his lawyer somehow prevented him from testifying. He did not. Lee was fully advised of his right to testify and chose not to. Lee cannot blame his attorney for a choice he knowingly made. *See United States v. Orr,* 636 F.3d 944, 955 (8th Cir. 2011) (rejecting claim that counsel was ineffective for discouraging defendant from testifying where the Court engaged defendant in elaborate discussion regarding his right to testify, and defendant knowingly waived that right). As Lee has failed to show any resulting prejudice from counsel's allegedly deficient performance, Ground 2 of Lee's § 2255 motion fails.

## C. Ground 3 is Procedurally Defaulted

"A collateral challenge may not do service for an appeal." *United States v. Frady,* 456 U.S. 152, 165 (1982). "[N]ormally a collateral attack should not be entertained if defendant failed, for no good reason, to use another available avenue of relief." *Poor Thunder v. United States,* 810 F.2d 817, 823 (8th Cir. 1987) (internal citation omitted). If a claim could have been raised on direct appeal but was not, it cannot be raised in a § 2255 motion unless the movant can show both (1) a "cause" that excuses the default, and (2) "actual prejudice" resulting from the errors of which he complains. *See Ramey v. United States,* 8 F.3d 1313, 1314 (8th Cir. 1993); *Mathews v. United States,* 114 F.3d 112, 113 (8th Cir. 1997).[2]

In Ground 3, Lee argues that the wiretaps should not have been admitted at trial. This claim is procedurally barred. Although counsel filed a motion to suppress the contents of electronic surveillance [Doc. # 100 in Case No. 4:17 CR 355], Lee voluntarily withdrew that motion. [Doc. # 116 in Case No. 4: 17 CR 355]. Lee also knowingly and voluntarily waived his right to file pretrial motions as well as his right to have a hearing on those motions. [Doc. # 121 Case No. 4: 17

---

[2] A movant can also avoid procedural default by demonstrating actual innocence. *Johnson v. United States,* 278 F.3d 839, 844 (8th Cir. 2002) ("In order to obtain collateral review of a procedurally defaulted issue, a § 2255 movant must show either cause and actual prejudice, or that he is actually innocent.") (internal quotation marks and citations omitted). Actual innocence is a strict standard that generally cannot be met "where the evidence is sufficient to support a conviction on the charged offense." *Id.* (internal quotation marks and citation omitted). Where, as here, the Court of Appeals has found that the evidence was sufficient to support his conviction, Lee cannot claim actual innocence.

CR 355]. Having voluntarily waived this issue, Lee cannot raise it here now. As Lee provides no attempt to allege sufficient cause and prejudice necessary to overcome the procedural default of this claim, Ground 3 of his § 2255 motion will be denied.[3]

### D. I Will Not Issue a Certificate of Appealability

As Lee has not made a substantial showing of the denial of a federal constitutional right, this Court will not issue a certificate of appealability. *See Cox v. Norris,* 133 F.3d 565, 569 (8th Cir. 1997) *(citing Flieger v. Delo,* 16 F.3d 878, 882-83 (8th Cir. 1994)) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal or otherwise deserving of further proceedings).

Accordingly,

**IT IS HEREBY ORDERED** that George Lee's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 [1] is denied.

---

[3] To the extent Lee attempts to avoid the procedural bar by blaming his attorney, the record conclusively refutes this claim. Lee appeared before Judge Baker and knowingly withdrew the motion himself. Moreover, even if this claim could be considered by this Court, it would be rejected as meritless because the wiretaps were properly obtained and lawfully issued.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as Lee has not made a substantial showing of the denial of a federal constitutional right.

                                                  _____
                                                  CATHERINE D. PERRY
                                                  UNITED STATES DISTRICT JUDGE

Dated this 23rd day of October, 2018.